United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Verbena Products LLC d/b/a Beautyvice, Plaintiff, <br><br> v. <br><br> Jose Felipe Hernandez Del Toro and others, Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 22-20218-Civ-Scola <br> ) <br> ) <br> ) |

**Order**

This matter is before the Court on the Defendant Jose Felipe Hernandez Del Toro's motion to dismiss. (ECF No. 17.) The Plaintiff filed an opposition to the motion (ECF No. 18), and Del Toro filed a reply brief in support of the motion (ECF No. 21). After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 17**.)

**1. Background**

This case is about a dispute between an employer and a former employee—a dispute that, while hardly a year old, has already spawned into multiple criminal and civil matters. Relevant to this case, Verbena sells cosmetic and beauty products online. (ECF No. 1 at ¶ 11.) Performing this work successfully requires Verbena to maintain, access, and transmit existing product inventory, sales data, and shipping information across each ecommerce platform. (*Id.* at ¶ 12.) To do so, Verbena uses software that it has "programmed, integrated and configured to work together in a specific sequence to allow a native website to interface with any number of online marketplaces to keep products and orders up to date." (*Id.*) These proprietary configurations permit Verbena to "seamlessly and efficiently manag[e] and operat[e] a successful online selling marketplace," increasing its efficiency and "streamlining its inventory management." (*Id.* at ¶¶ 18, 21, 30.) In essence, Verbena alleges that it has configured various software programs in a unique and proprietary manner in order to optimize back-end sales infrastructure. (*See id.*)

Verbena hired Del Toro in February 2016. (ECF No. 1 at ¶ 13.) With no prior ecommerce experience, Del Toro was hired as a "picker and packer," although in four years he was promoted to warehouse manager. (*Id.* at ¶¶ 13, 17.) In this position, Del Toro had access to Verbena's inventory systems, security controls, customer lists, and management software. (*Id.* at ¶¶ 1, 18.) Moreover, once promoted, Del Toro received various instructions and tutorials in Verbena's proprietary configurations. (*Id.* at ¶¶ 21–22.)

However, after noticing discrepancies in its inventory, Verbena investigated Del Toro, which resulted in his arrest in April 2021 as well as the initiation of a pending state civil action. (*Id.* at ¶ 20.) Nonetheless, later that year, Del Toro incorporated Defendant TopTrending Products LLC. (*Id.* at ¶ 23.) TopTrending also sells products online, including products that Verbena sells. (*Id.* at ¶ 24.) Verbena now alleges that Del Toro misappropriated its trade secrets for use in his new ecommerce business, which has quickly become competitive. (*Id.* at ¶¶ 24–25.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Therefore, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "is not akin to a 'probability requirement,'" but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Therefore, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

To state a claim under the Defend Trade Secrets Act ("DTSA"),[1] a plaintiff must plausibly allege that it "(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1292–93 (S.D. Fla. 2018) (Bloom, J.) (cleaned up) (discussing 18 U.S.C. §§ 1836 *et seq.*).

Del Toro argues that Verbena failed to allege all three prongs. The Court will address each.

### A. Did Verbena own a trade secret and take reasonable measures to keep it secret?

First, Del Toro argues that Verbena failed to allege the first prong, namely that it "(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret[.]" *See id.*; (ECF No. 17 at 4–6.) Verbena counters that its allegations are sufficient to withstand a motion to dismiss. (ECF No. 18 at 4–7.) The Court must determine whether the alleged trade secret is appropriately a trade secret, and, if it is, whether Verbena sufficiently alleged that it owns the trade secret, that the trade secret has independent economic value, and that Verbena took reasonable steps to keep the trade secret confidential.

#### 1. The Trade Secret

Pleading trade secrets can be difficult. Courts cannot expect plaintiffs to "divulge all the details of its confidential and proprietary information" in their complaints—particularly as plaintiffs seek to protect such proprietary information's value, which is derived from its secrecy. *See DeCurtis LLC v. Carnival Corp.*, No. 20-22945-Civ, 2021 WL 1968327, at *7 (S.D. Fla. Jan. 6, 2021) (Torres, Mag. J.). Nonetheless, defendants must be put on adequate notice of what it is that they are alleged to have misappropriated. *See DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) ("[T]he plaintiff need

---

[1] Verbena also brings a claim under the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.001 *et seq.* As the DTSA "largely mirrors" the FUTSA, the court will apply the same standards to each. *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020) (noting that many elements of the two statutes are "largely identical" and "substantially equivalent," although noting "one important difference" being that the DTSA exempts "reverse engineering, independent derivation, or any other lawful means of acquisition" from its definition of "improper means"); *see also Matrix Health Grp. v. Sowersby*, No. 18-cv-61310, 2019 WL 4929917, at *6 (S.D. Fla. Oct. 7, 2019) (Altman, J.) (analyzing the plaintiff's DTSA and FUTSA claims simultaneously).

only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret."). Balancing these two interests, courts have held that plaintiffs must allege a trade secret with "sufficient particularity" and do more than "identify broad categories of information." *See DeCurtis*, 2021 WL 1968327, at *5; *WIG, Inc. v. Alvarez*, No. 18-23109-CIV, 2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019) (Altonaga, J.) (quoting *DynCorp*, 664 F. App'x at 849).

    The Court holds that Verbena's complaint meets the "sufficient particularity" standard. As an initial matter, Del Toro's motion misconstrues what Verbena alleges to be its trade secrets. Del Toro argues that the alleged trade secrets are merely third-party "software, programs, and algorithms" that are "generally known to and used by the general public." (ECF No. 17 at 5.) The source of Del Toro's confusion is apparent. Verbena first defines its trade secrets as "confidentially maintained marketplace management and inventory product data control module algorithms relating to Plaintiff's real time ecommerce operations and sales business models." (ECF No. 1 at ¶ 1.) But later, Verbena clarifies that the trade secrets at issue are not the software or commercial algorithms, but rather the manner in which these systems are "programmed, integrated and configured to work together" to interface with various ecommerce platforms and track products and orders. (*Id.* at ¶ 12.)

    Courts have held that such software configurations can constitute trade secrets. *See Sentry Data*, 361 F. Supp. 3d at 1294 (holding that allegations of "proprietary configurations and data specifications of [plaintiff's] software" were sufficiently alleged trade secrets); *see also Cap. Asset Rsch. Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998) ("Even if all of the information is publicly available, a unique compilation of that information, which adds value to the information, also may qualify as a trade secret."); 28 U.S.C. § 1839(3) (defining "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes[.]").

    Moreover, Verbena's alleged trade secrets are not impermissibly couched in "broad categories of information." *See DynCorp*, 664 F. App'x at 849. Rather than asserting that its trade secrets fall into generalized buckets such as "financial and technical data," Verbena details the use and function of its proprietary configurations, alleging that they "allow a native website to interface with any number of online marketplaces to keep products and orders up to date." (ECF No. 1 at ¶ 12); *see DynCorp*, 664 F. App'x at 849.

    Therefore, the Court finds that Verbena's alleged trade secrets have been pled with sufficient particularity.

### *2. Value, Ownership, and Secrecy*

Now that the trade secrets, as pled, have been defined, the remainder of the first prong's elements are straightforward.

*Independent economic value*: Verbena pled that the trade secrets enable Verbena to "connect seamlessly to a series of selling platforms, while maintaining accurate data on all platforms in real time," and "to uniquely increase the company's productivity while streamlining its inventory management." (ECF No. 1 at ¶¶ 12, 21.) Moreover, Verbena alleged that it spent a decade to "perfect" its processes. (*Id.* at ¶ 12.) The time and effort that were expended into developing Verbena's trade secrets, as well as the economic benefit in efficiency and productivity, plausibly allege that the trade secret derives independent economic value from not being generally known or readily ascertainable. *See Ultimate Fitness Grp., LLC v. Anderson*, No. 18-cv-60981, 2019 WL 8810367, at *4 (S.D. Fla. Mar. 13, 2019) (Bloom, J.) (looking to the resources spent on building the trade secret and whether it would be valuable to a competitor when determining that a trade secret has independent economic value).

*Ownership*: Verbena alleges that it owns the trade secrets and "perfect[ed]" its systems over the past decade. (ECF No. 1 at ¶¶ 1, 12, 29.) This is sufficient to allege that Verbena owns the trade secrets at issue.

*Reasonable Steps*: Verbena alleges that all employees—including Del Toro—receive a company handbook, which includes a confidentiality agreement, and that Del Toro agreed to be bound by the confidentiality agreement. (*See id.* at ¶¶ 14–16, 29.) Therefore, Verbena sufficiently alleged that it has taken reasonable measures to keep the trade secrets confidential. *See Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-cv-1468-T-33TBM, 2013 WL 3975675, at *4 (M.D. Fla. July 31, 2013) (holding that allegations of employers requiring employees to execute a confidentiality agreement suffice to allege that the employer took reasonable steps to protect its trade secrets).

### B. Misappropriation

Second, Del Toro argues that Verbena failed to allege that he used or disclosed the trade secret despite having the duty to maintain its secrecy. (ECF No. 17 at 5.) Del Toro argues that Verbena, at most, only alleges that he had access to the trade secrets and that he was later accused of an unrelated theft. (*Id.*) However, at the motion-to-dismiss stage, Verbena need only plead allegations permitting an inference of wrongdoing. *See Iqbal*, 556 U.S. at 678. Here, Verbena alleges that Del Toro had access to its trade secrets and had a duty to maintain their secrecy, given his training on the trade secrets as well as

his receipt of, and agreement to, the employee handbook. (ECF No. 1 at ¶¶ 14–16, 21–22.) Therefore, Verbena sufficiently alleged that Del Toro knew that he had a duty to maintain the secrecy of the trade secrets. *See Pinnacle Agric. Distrib., Inc. v. Mayo Fertilizer, Inc.*, No. 1:17-CV-029, 2019 WL 13095501, at *12 (M.D. Ga. Mar. 29, 2019) (holding that a defendant knew he had a duty to maintain the secrecy of certain information as he was subject to an employee handbook and a nondisclosure agreement).

Moreover, taken as true, Verbena's allegations sufficiently permit one to infer wrongdoing. Verbena pled that following an investigation—which allegedly found that Del Toro stole Verbena's inventory—Del Toro started his own ecommerce business and began quickly and competitively marketing and selling products online, including products that Verbena sells. (ECF No. 1 at ¶¶ 22–25.) Given that Del Toro, who had no previous experience in ecommerce prior to working at Verbena, started his own competitive ecommerce business—selling the same products that Verbena sold—mere months after Verbena investigated him for stealing inventory, it is plausible to infer that Del Toro improperly used the trade secrets. (ECF No. 1 at ¶¶ 13, 22–24); *see also Spigot, Inc. v. Hoggatt*, No. 2:18-cv-764-FtM-29NPM, 2020 WL 1955360, at *5–6 (M.D. Fla. Apr. 23, 2020) (holding that allegations of misappropriation in connection with a former employee creating a competing business using the alleged trade secrets suffices to state a claim).

In all, the Court finds that Verbena has sufficiently alleged that it "(i) possessed information of independent economic value that (a) was lawfully owned by [Verbena] and (b) for which [Verbena] took reasonable measures to keep secret, and (ii) [Del Toro] used and/or disclosed that information, despite (iii) a duty to maintain its secrecy."[2] *See Sentry Data*, 361 F. Supp. 3d at 1292–93.

---

[2] In the alternative, Del Toro asks the Court to consider facts outside the pleadings and convert his motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). (ECF No. 17 at 8.) However, Del Toro's argument is premised on his misunderstanding of Verbena's alleged trade secrets. Del Toro argues that summary judgment is warranted because Verbena does not own the commercially available software that Verbena uses to track its sales. But, as explained above, Verbena does not allege trade secrets in the software itself. Verbena's alleged trade secrets are in the proprietary configurations of various programs to optimize back-end sales infrastructure. Therefore, summary judgment is not appropriate at this time. *See Matrix Health*, 2019 WL 4929917, at *6 (noting that "[c]ourts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets") (quoting *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007)).

### 4. Conclusion

For the reasons set out above, the Court finds that Verbena sufficiently alleged violations of the DTSA and the FUTSA. Therefore, the Court **denies** Del Toro's motion to dismiss. (**ECF No. 17**.)

**Done and ordered** in Miami, Florida, on March 28, 2022.

_____
Robert N. Scola, Jr.
United States District Judge